STITZER (DAVIS v.). See Case No. 3,654.

---

## Case No. 13,461.

### STOBAUGH v. MILLS et al.

[8 N. B. R. 361;[1] 5 Chi. Leg. News, 526; 2 Am. Law Rec. 666; 5 Leg. Op. 139.]

District Court, D. Texas. 1873.

BANKRUPTCY — ILLEGAL PREFERENCE — INTENT — KNOWLEDGE OF BANKRUPT'S INSOLVENCY— DEED OF ASSIGNMENT.

1. To establish an intent to prefer a creditor, it is sufficient for the assignee to show that the bankrupt, while insolvent, paid or secured this creditor in full without making adequate provisions for the other creditors, and this will place upon the defendant the onus of satisfying the court, that at the time of making the transfer or payment the bankrupt did not know he was insolvent.

2. It is sufficient proof that the creditor had reasonable cause to believe that the debtor intended to prefer him to show that at the time of receiving the preference he had reasonable cause to believe the debtor insolvent, and that the debtor knew of his insolvency.

3. A deed of assignment by A to B and C, within four months prior to commencement of proceedings in bankruptcy, of all of A's property in trust, to pay first the debts of B, C and D in full, and to apply the balance pro rata upon the debts of the other creditors, and the amount turned over being insufficient to pay all in full, is void on its face, and a palpable and manifest attempt to prefer B, C and D, and to evade the provisions of the bankrupt act.

[This was a bill in equity by A. G. Stobaugh, assignee, against J. J. Mills and Thomas L. Fitch, trustees. Heard upon bill, answer, and exhibits.]

DUVAL, District Judge. Levy & Bro., filed their petition praying to be adjudged bankrupts, on the 12th of September, 1868, and were adjudicated bankrupts on the 26th of October, 1868. Complainant, as the assignee of said bankrupts, filed his bill in equity, in this court, on the 24th of March, 1871, seeking to set aside a deed of assignment made by the

---

[1] [Reprinted from 8 N. B. R. 361, by permission.]

said bankrupts to the defendants, on the 22d day of May, 1868, as being fraudulent, and to recover the property thereby conveyed to defendants as trustees, &c. At the date of the assignment, the defendant, Mills, and his wife, were creditors of bankrupts to the amount of about two thousand dollars, and the defendant, Fitch, to about one thousand dollars, and as such creditors they accepted the trust. The bankrupts were merchants, and by the terms of the deed of assignment (which was joint and several, as well as irrevocable) they conveyed to the said defendants, all their goods, wares and merchandise, chattels, notes, bills, bonds, judgments, evidences of debt, securities and vouchers, for and affecting the payment of money, claims, demands, things in action, and all property of any nature whatsoever; all of which the defendants seem to have received in their possession as trustees aforesaid. The deed of assignment further provides that the debts due from bankrupts to defendants and one R. Walden should be paid in full—that certain other debts therein mentioned, should then be paid off and discharged, if there were sufficient funds for that purpose, and if not, they were to be paid pro rata, &c. The bill specifically alleges, among other things, that within less than four months before the filing of the petition of Levy & Bro., in bankruptcy, to wit: on the 22d of May, 1868, they being then in failing circumstances, and contemplating bankruptcy, and being insolvent, made the said deed of assignment, and, among other assets, delivered to said defendants, as trustees aforesaid, goods, wares and merchandise, then on hand, to the value of three thousand nine hundred and fifty-nine dollars and twenty-seven cents, as appears from a schedule thereof, made a part of the bill. It is further alleged in the bill that the defendants knew Levy & Bro. were insolvent at the time of the assignment, and contemplated bankruptcy, and that they combined and confederated with said Levy & Bro., and fraudulently procured the making of the same, in order that said defendants might receive a preference of payment over other creditors of said bankrupts.

The defendant, Fitch, failing to answer the bill, a decree pro confesso has been taken against him, and at this term leave to enter a final decree as to him has been prayed and granted. The defendant, Mills, filed his answer on the 3d of July, 1872. He denies any knowledge of the bankrupts contemplating bankruptcy at the time of the assignment, or that the making of the same was fraudulently procured by the trustees, who only received the same for the purpose of securing their own legal and honest debts—denies that he took or intended to take any fraudulent preference over other creditors—denies that trustees applied any assets of the bankrupt estate to the payment of their own debts in full, but admits that about one thousand five hundred and sixteen dollars worth of goods

was turned over to him, Mills, under a judgment of the district court, of Johnson county, at the fall term of 1868—denies that any demand for the goods, &c., or for any account thereof was made of him by complainant, but admits that there was of his co-trustee, Fitch, in the month of ——, 1869. The charge of insolvency on the part of Levy & Bro., at the time of the assignment, and the knowledge thereof by defendants, is not denied. They only deny any knowledge of a contemplation of bankruptcy. Admits that he and his co-trustee took possession of a bill of merchandise, amounting to about three thousand nine hundred and fifty-nine dollars and twenty-seven cents, but avers that the same were returned to the possession of Levy & Bro., after the deed of assignment was made, and before Levy & Bro., went into bankruptcy, who sold the most of them, &c.

The cause is now heard and tried upon bill, answer and exhibits. The admission contained in the answer, shows its falsity or inaccuracy in some respects; thus, while denying notice of the filing of the petition in bankruptcy until he learned through Messrs. Robertson & Herndon, in the early part of the year 1871, he admits that complainant, as assignee of the bankrupts, demanded the goods of his co-trustee in the month of ——, 1869. Now the filing of the petitions in bankruptcy in September, 1868, was constructive notice to the defendants of that fact, and a demand of the goods by the assignee in 1869, upon Fitch, was in law a demand on the defendant Mills. Again, while averring that all the goods, &c., were turned over to Levy & Bro. before September 12th, 1868, the answer admits, in another part, that six hundred dollars worth were turned over to complainant, as assignee, in 1869. The act of one joint and several trustee is the act of both. If the trustees, as alleged in the answer, returned the bill of goods amounting to three thousand nine hundred and fifty-nine dollars and twenty-seven cents to Levy & Bro., such a return was wholly inconsistent with the assignment, and the purposes for which the defendants undertook the trust. It would of itself be a very suspicious act, and in any event could not relieve the defendants from the legal effect of the trust deed. Upon the face of the answer it is, in some material respects, vague, evasive and contradictory, and not responsive to the allegations of the bill. Now, as to the legal effect of the assignment itself, it shows by its very terms that the bankrupts were then insolvent. They were merchants and unable to pay their debts in the ordinary course of business. This is the avowed cause prompting them to make the assignment. And when, in addition to this fact, we find by reference to their schedules, made exhibits herein, and filed in the bankrupt court, that the bankrupts were then indebted to over twenty thousand dollars, there can be no question as to their utter insolvency. That the defendants not only had

reasonable cause to believe Levy & Bro. to be then insolvent, but that in the very nature of things they must have known it, there can hardly be a question. The deed of trust itself, with its admissions as to the inability of the bankrupts to meet their debts, was sufficient notice of the fact to the defendants who were themselves creditors. That the deed of assignment gave the defendants a preference over other creditors is equally free from doubt.

In the case of Toof v. Martin [13 Wall. (80 U. S.) 40], the supreme court of the United States, says: "It is a general principle that every one must be presumed to intend the necessary consequences of his acts. The transfer, in any case, by a debtor, of a large portion of his property, while he is insolvent, to one creditor, without making provision for an equal distribution of its proceeds to all his creditors, necessarily operates as a preference to him, and must be taken as conclusive evidence that a preference was intended, unless the debtor can show that at the time he was ignorant of his insolvency, and that his affairs were such that he could reasonably expect to pay all his debts. The burden of proof is upon him in such case, and not upon the assignee or contestant in bankruptcy." No such proof was made or attempted in this case. Moreover, it is evident that the assignment in this case was made out of the usual and ordinary course of business of the bankrupts, and by the thirty-fifth section of the bankrupt act, this is made prima facie a case of fraud upon that act.

From the evidence before me it is clear to my mind: First. That at the time of the assignment to the defendants by Levy & Bro., the latter were insolvent. Second. That the assignment was made with a view (among other things) to give a preference to the defendants as creditors. Third. That the defendants knew, or had reasonable cause to believe, the bankrupts were insolvent at the time. Fourth. That the assignment was made in fraud of the provisions of the bankrupt act. These conclusions being reached, it follows that the deed of assignment was void, and must be set aside—that the said defendants being cognizant of the fraud, and having thereby a preference over other creditors ought not to be allowed to prove their debts or share in the dividends of the estate of the bankrupts. And that the complainant is entitled to have a decree for all such sums as were received or collected by said defendants out of the assets of the bankrupts under or by virtue of said assignment (less the amounts the said defendants may have paid over to said complainant) together with legal interest on such sums from the time the complainant demanded the goods, also that defendants are entitled to, and should be allowed, such reasonable expenses as they may have sustained in the sale of said goods. There is some difficulty in ascertaining the precise amount that defendants did receive

under the deed of assignment, but there is no doubt, I think, on the answer of Mills, that they did receive goods, wares and merchandise amounting to three thousand nine hundred and fifty-nine dollars and twenty-seven cents. This shows that in 1869, goods to the value of six hundred dollars were delivered to complainant, and complainant avers that the expenses of defendants on the sale of said goods were reasonably worth four hundred and fifty dollars. Adding these two sums together they make one thousand and fifty dollars, which should be deducted from three thousand nine hundred and fifty-nine dollars and twenty-seven cents, leaving, certainly, on January the 1st, 1870, two thousand nine hundred and nine dollars and twenty-seven cents. To this sum add the legal interest at eight per cent. from demand made (say January 1st, 1870) to May 16th, 1872, amounting to seven hundred and eighty-three dollars and fifty cents, and it will make a total of' three thousand six hundred and ninety-two dollars and seventy-seven cents, for which the complainant should have a judgment. There were other sums claimed in the bill, to wit: An order on the treasurer of Johnson county for four hundred and five dollars, and accounts amounting to three hundred and fifty-five dollars and fifty-five cents, but which have not been satisfactorily proven to have been collected by defendants, nor have the two items of goods alleged to have been shipped to defendants, one for five hundred dollars, and the other for one thousand six hundred dollars.

Inasmuch as Mills and Fitch were made joint trustees, and decree final has been taken against the latter, and the cause has been fully argued and considered upon the bill, answer and exhibits in the case of Mills, it is ordered that the same decree final be entered in the cause as to both defendants, and that they be held and bound liable, jointly and severally, for the sum above stated, and final decree entered therefor in behalf of complainant. And it is ordered, adjudged and decreed accordingly.